IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MARSHALL H. FOSTER, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 3:05-CV-776-MEF |
| | ) |
| JO ANNE B. BARNHART | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

**<u>RECOMMENDATION OF THE MAGISTRATE JUDGE</u>**

**I.  INTRODUCTION.**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act,  42 U.S.C. § 401, alleging that he was unable to work because of a disability. His application was denied at the initial administrative level.  The plaintiff then requested and received a hearing before an Administrative Law Judge (ALJ).  Following the hearing, the ALJ also denied the claim.  The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3). Based on the court's review of the record in this case and the briefs of the parties, the court

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

concludes that the decision of the Commissioner should be reversed.

## II.  STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...

To make this determination[2] the Commissioner employs a five step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the *Listing of Impairments*]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one.  This court

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. THE ISSUES

**A. Introduction**

The plaintiff was thirty-nine years old at the time of the hearing before the ALJ and has a seventh grade education. The plaintiff's prior work experience includes work as a maintenance repairman, service station attendant, cashier/stocker, and material handler. Following the administrative hearing, the ALJ concluded that the plaintiff had the following severe impairments: status post left foot amputation, congenital hearing loss, IQ scores in the mild mental retardation range, and a single episode of mild major depressive disorder. Nonetheless, the ALJ concluded that the plaintiff was not disabled because the plaintiff had

the residual functional capacity to perform his past relevant work as a service station attendant or cashier.

## B. Plaintiff's Claims

The plaintiff presents the following issues for review: (1) whether the ALJ improperly found that the plaintiff did not meet the requirements of listings 1.05, 2.08, or 12.05; (2) whether the ALJ improperly discounted the plaintiff's testimony of disabling pain; (3) whether the ALJ improperly failed to consider the report of a vocational specialist; (4) whether the ALJ made an improper observation regarding hearing aids; and (5) whether the Appeals Council improperly failed to consider the plaintiff's school records.

## IV. DISCUSSION

### A. The Listings

The plaintiff argues that the ALJ improperly found that the plaintiff did not meet the requirements of listings 1.05 (amputation), 2.08 (hearing impairments), or 12.05 (mental retardation).

<u>1. Amputation.</u>  Listing 1.05, as applicable to the plaintiff, requires amputation of "[o]ne or both lower extremities at or above the tarsal region, with stump complications resulting in medical inability to use a prosthetic device to ambulate effectively...which have lasted or are expected to last for at least 12 months."  Listing 1.00Bb(2) defines "to ambulate effectively" as follows: "[I]ndividuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school."

4

The plaintiff suffered amputation of one lower extremity, but the medical expert (R. 288) and the ALJ found that he did not lose the ability to ambulate effectively. As the ALJ wrote,

> In May 2000, he received his permanent prosthesis and was released by [treating orthopedist] Dr. Harvey to full duty work with the exception of no climbing. Although the claimant experienced some intermittent problems with his prosthesis thereafter, requiring prosthetic adjustments or replacement, he continued to work for the next two years...Notes, dated June 22, 2000, stated that he had returned to his regular job. Notes, dated September 12, 2002, stated that he continued to perform heavy labor four hours a day...

(R. 24). Independent review of the record supports these findings (R. 182, 186-87). If the plaintiff worked for two years after receiving his prosthesis, he was able to get to work (the record is devoid of evidence that he needed "companion assistance" for this purpose; and the plaintiff testified that he could still drive at the time of the hearing, R. 275-76). A psychiatric examiner noted that the plaintiff could "take care of his activities of daily living unassisted" (R. 226). The decision of the ALJ is not due to be reversed on this ground.

2. Hearing Loss. Listing 2.08 of the Listing of Impairments requires hearing "not restorable by a hearing aid" manifested by

> A. Average hearing threshold sensitivity for air conduction of 90 decibels or greater and for bone conduction to corresponding maximal levels, in the better ear, determined by the simple average of hearing threshold levels at 500, 1000, and 2000 hz; or
>
> B. Speech discrimination scores of 40 percent or less in the better ear.

As interpreted by the Social Security Administration in its *Programs Operational Manual System*, and by this court, these thresholds assume that a hearing aid is worn at the time of the

5

testing. *Biatsacos v. Barnhart*, 353 F. Supp. 2d 161, 168 (D. Mass. 2005). The record contains one hearing aid evaluation from 2003 (R. 230-33). The pure tone audiogram scores from 500, 1000, and 2000 Hertz do not show any thresholds above 90 db, and the speech discrimination scores with the hearing aid were 80% or higher (R. 232). The plaintiff did not meet the requirements of listing 2.08, and the decision of the ALJ is not due to be reversed on this ground.

3. <u>Mental Retardation.</u>  For a plaintiff to be found disabled under any part of Listing 12.05, he must have "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period" and, in addition, he must meet one of the four requirements described in subparagraphs A through D. *See* Listing 12.00A ("If your impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria, we will find that your impairment meets the listing" (emphasis added)). The record shows, and the ALJ acknowledged, that the plaintiff's IQ scores fell between 60 and 70, as required for sublistings 12.05C and D (R. 228). However, the record, including the psychological examination (R. 225-29), is devoid of evidence that the plaintiff had "deficits in adaptive functioning" at any point in his life. The plaintiff did not meet the requirements of listing 12.05, and the decision of the ALJ is not due to be reversed on this ground.

**B.  Pain Testimony**

The plaintiff argues that the ALJ improperly found that his testimony of disabling pain was disproportionate to the objective evidence. However, the only evidence the plaintiff cites

is his own subjective testimony (doc. #10, filed December 12, 2005, p. 18)**.** In the Eleventh Circuit, a claimant's assertion of disability through testimony of pain or other subjective symptoms is evaluated pursuant to a three-part standard.  "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  If the complaints meet the standard, the ALJ may still reject the claimant's testimony regarding pain.  However, if these complaints are critical to the case, the ALJ must articulate specific reasons for rejecting the testimony.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

>The ALJ wrote as follows:
>
>In regard to physical impairments, the reocrd shows that claimant injured his left foot in a motorcycle accident; and, as a result, his leg was amputated below the knee in October 1999. Two months later, in December 1999, he was fitted with a temporary prosthesis and was able to wear it without complications.  In May 2000, he received his permanent prosthesis and was released by Dr. Harvey to full duty work with the exception of no climbing. Although the claimant experienced some intermittent problems with his prosthesis thereafter, requiring prosthetic adjustments or replacement, he continued to work for the next two years...Notes, dated June 22, 2000, state that he had returned to his regular job. Notes, dated September 12, 2002, state that he continued to perform heavy labor four hours a day, which included lifting weight upwards of 110 pounds. On the latter date, as the claimant was experiencing some leg pain, Dr. Harvey restricted his lifting to no more than 20 pounds. Subsequent notes indicate his pain significantly improved with this work restriction.  I do note that claimant testified to having moderately severe pain...on an average day.  This, according to the medical expert, might be reasonabl[e] if he had a neuroma, but there is no evidence of this in the record. Furthermore, such pain level is inconsistent with the fact that no prescription medication for pain has been taken since June 2000.  In fact, it appears that the

> claimant has not taken over-the-counter pain relievers on a regular basis...A recent consultative physical examination has shown some limited ability to squat and to heel and toe walk with the prosthesis; otherwise, clinical findings were unremarkable with normal (5/5) motor strength in all extremities, sensation, and gait...

(R. 24-25). Independent review of the record supports these findings (R. 180-82, 186-87, 190-90A, 234-36, 294). Thus, the record supported the evidence of an underlying medical condition (namely, the amputation of the plaintiff's left leg) but did not support the severity of the alleged pain, or the existence of a condition that might reasonably be expected to cause pain so severe. Without such evidence, the ALJ could not find the plaintiff's pain disabling under the Eleventh Circuit standard, and did not err when he found the plaintiff's pain not disabling.[4] The decision of the ALJ is not due to be reversed on this ground.

## C. Vocational Consultant

At the hearing, the plaintiff presented the report and curriculum vitae for a vocational specialist named Joseph Miller (R. 106-14).[5] Mr. Miller interviewed the plaintiff, reviewed his medical records, and performed a "Wide Range Achievement Test" for reading and arithmetic (R. 112-13). Mr. Miller concluded that the plaintiff was not employable "within the local, regional, or national economy for jobs in significant numbers." The ALJ did not

---

[4] The ALJ also cited reasons for discounting the plaintiff's credibility (R. 26). The plaintiff argues that two of these reasons (a false answer with respect to unemployment benefits and an inability to support a claim regarding vocational rehabilitation) are invalid (doc. #10, filed December 12, 2005, p. 19). However, since the ALJ could not find the plaintiff's complaints of pain disabling even if he had believed the testimony (because the record did not contain the necessary objective evidence), any error he committed in this credibility determination is harmless.

[5] Mr. Miller was apparently present at the hearing (R. 270) but was not questioned (plaintiff's counsel said he planned to use Mr. Miller if needed for rebuttal, R. 294).

discuss Mr. Miller's report in his opinion, and the plaintiff argues that this was error.

Mr. Miller's curriculum vitae (R. 106-09) does not show medical or psychiatric qualifications. Most of his report relates subjective complaints that the ALJ had from other sources, including the plaintiff's hearing testimony. Mr. Miller described his test results as "consistent" with the IQ test results already taken by the psychiatric examiner (R. 113, 228). Thus, the evidence in Mr. Miller's report is cumulative with (and, for the most part, taken from) other sources which the ALJ explicitly considered. Mr. Miller's opinion that the plaintiff was disabled was entitled to no particular weight,[6] and the ALJ did not have to consider or rely upon it for his conclusion to be supported by substantial evidence. The decision of the ALJ is not due to be reversed on this ground.

### D.  Observation Regarding Hearing Aids

The plaintiff complains that the ALJ "stated that he found it curious that the Claimant only owned one set of hearing aids [in his lifetime] even though he had medical coverage through his employer (R. 25)." However, the plaintiff does not show how this observation renders the opinion of the ALJ invalid.[7] The statement occurs in the following context:

> Doctors have observed that [the plaintiff's] language, voice and intonation are

---

[6] Under 20 C.F.R. § 404.1527(e)(3), even a treating medical source opinion on the subject of disability is not given special weight, because that issue is reserved to the Commissioner.

[7] The section of the plaintiff's brief dealing with this complaint is titled, "The Administrative Law Judge Improperly Substituted His Own Opinion or Conclusion" (doc. #10, filed December 12, 2005, p. 19), but the plaintiff does not explain what the ALJ substituted his opinion *for*, or how this substitution was unlawful. The ALJ was entitled to draw conclusions regarding the plaintiff's impairments and their effect on his ability to work, provided that these conclusions were lawfully reached and based on substantial evidence.

> within normal limits and that he has fair lipreading ability...They have also shown that his hearing loss can be significantly improved with hearing aids. What is curious here, is that the claimant was allegedly found to have a hearing problem in the 3rd grade but did not obtain his first hearing aid until he was 23 years of age. He has never owned but one pair of hearing aids in his lifetime even though he has had medical insurance coverage through his employment. He now uses the hearing aids of other family members. All of the evidence, taken together, suggests that the claimant has been able to communicate effectively without the use of a hearing [aid]...[An examining physician] noted that the claimant appeared to hear normal conversation with the use of his hearing aid. At the disability hearing, I, myself, observed that the claimant had very little difficulty understanding my questions put to him. I also note, with particularity, that he has been able to work most of his adult life in spite of a hearing problem.

(R. 25). The ALJ's point was that the plaintiff's lifelong hearing difficulties, while real, had not proven disabling even when he had no hearing aid. This finding is supported by the record. The decision of the ALJ is not due to be reversed on this ground.

**E. School Records**

The plaintiff states that he submitted some of his school records to the Appeals Council, and that the Appeals Council improperly failed to consider them. The record before the court does not show the truth of these statements (*see* R. 4-8), but they are immaterial in any case under *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). When, as here, the Appeals Council has denied review, the court "will only look to the evidence presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence," but will still consider later evidence submitted to the appeals council in deciding whether to remand. *Falge*, 150 F.3d at 1323. A claimant seeking to introduce evidence post-hearing must establish that (1) new, noncumulative evidence exists; (2) the evidence is material such that

a reasonable possibility exists that the new evidence would change the administrative result; and (3) good cause exists for the applicant's failure to submit the evidence at the appropriate level. *Butler v. Barnhart*, 347 F. Supp. 2d 1116, 1124 (M.D. Ala. 2003), *citing Falge*, 150 F. 3d at 1323; *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1067 (11th Cir. 1994). The records in question are not new, and the plaintiff has not presented good cause for his failure to submit them to the ALJ. Accordingly, the court may not consider them. The decision of the Commissioner is not due to be reversed on this ground.

**F. Past Relevant Work**

As shown above, the objections raised by the plaintiff to the decision of the Commissioner lack merit. Nonetheless, independent review of the record convinces the court that this case is due to be reversed.

At the hearing, the ALJ consulted a vocational expert (VE), who listed "cashier/stocker" and service station attendant among the plaintiff's past relevant jobs (R. 298). The VE stated that the cashier/stocker job was a "hybrid" between work as a cashier and work as a stocker, and said that the plaintiff functioned at the medium level of exertion, but that a cashier's job was normally light. The vocational expert stated that the plaintiff performed the service station job at a medium exertional level, but that the Department of Labor's *Dictionary of Occupational Titles* (DOT) listed it as light work. The expert stated that his testimony was consistent with the DOT (R. 298). In his hypothetical question to the VE, the ALJ included limitations of "no background noise" and "[avoidance of] all exposure to noise, vibration, fumes, odors, dust, gases, poor ventilation" (R. 300), and these limitations

matched the ALJ's ultimate findings (R. 26, 28).  The ALJ asked whether someone with those limitations could do the plaintiff's past work, and the VE replied, "Just the light job referenced earlier" (R. 301).  Based on this testimony, the ALJ found that the plaintiff could perform his past relevant work as a cashier or as a service station attendant (R. 27-28).

The ALJ erred in finding that the plaintiff's past relevant work included work as a cashier.  When a claimant has had a "hybrid" job – in this case, as a cashier/stocker – the ALJ cannot "bifurcate" the job and find that a plaintiff who can meet the demands for one part of that job is therefore able to do past relevant work.  Instead, the claimant must be able to meet *all* demands of the previous position in order to be found able to perform past relevant work.  *Bechtold v. Massanari*, 152 F. Supp. 2d 1340, 1345 (M.D. Fla. 2001), *aff'd*, *Bechtold v. Barnhart*, 31 Fed. Appx. 202 (11th Cir. 2001) (table).  *See also Armstrong v. Sullivan*, 814 F. Supp. 1364 (W.D. Tex. 1993) ("cook-cashier" position could not be divided into "cook" and "cashier" in order to find the plaintiff could perform past relevant work as a "cashier").

In addition, the VE's testimony is unclear on key points, and is not consistent with the *Dictionary of Occupational Titles*.  When the VE stated that the plaintiff could perform "the light job referenced earlier," he did not state which "light work" he had in mind: the "cashier" half of the medium-level "cashier-stocker" job, or the work as a service station attendant.  If he meant the former, as shown above, the past relevant work finding was invalid.  Moreover, since the plaintiff performed both jobs at the medium level of exertion, the VE apparently meant that he could perform one or both of these jobs as normally performed in the national

12

economy, and as described in the DOT.[8]  According to the Department of Labor's *Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles* (1993), Part A, listings 211.462-010 (cashier II), 915.416-010 (service-station attendant), neither job meets the requirement of " no background noise" as described by the ALJ in his hypothetical question.  The cashier position is described as having a "moderate" level of noise intensity and requiring "frequent" hearing.  The service-station job has "loud" noise intensity, and requires a medium level of physical exertion with "constant" hearing, exposure to weather "frequently," to vibrations "often," and to other environmental effects "often." While the index does not say whether these other effects include fumes, dust, and gases, such effects are consistent with the description of the job in the DOT, which states that a service-station attendant "[s]ervices...automotive vehicles with fuel, lubricants, and accessories..."

The ALJ's hypothetical question required no background noise, no exposure to vibrations, and no exposure to fumes, dust, or gases.  On the record before it, the court cannot conclude that the vocational expert applied the restrictions in the ALJ's hypothetical question in the way that the ALJ intended.  Accordingly, the court cannot conclude that the ALJ's finding that the plaintiff could perform his past relevant work was supported by substantial evidence.

## V. CONCLUSION

Based on the foregoing analysis, it is the RECOMMENDATION of the magistrate judge

---

[8] While the DOT does not bind the Agency, and VE testimony is entitled to more weight than the DOT, *Jones v. Apfel*, 190 F.3d 1224, 1229-30 (11th Cir. 1999), in this case the VE testified that his findings were consistent with the DOT (R. 298), and the ALJ made his decision on that basis.

that the decision of the Commissioner be reversed, and the case remanded to the Commissioner for further proceedings consistent with this opinion.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **December 21, 2006.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 7th day of December, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE